**UNITED STATES of America, Appellee,**

v.

**James E. MALLEN, Appellant.**

**Nos. 87–1590, 87–1722.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1987.

Decided April 4, 1988.
Rehearing and Rehearing En Banc Denied May 10, 1988.

---

Raymond Rosenberg, Des Moines, Iowa, for appellant.

Robert L. Teig, Asst. U.S. Atty., Cedar Rapids, for appellee.

Before JOHN R. GIBSON, BOWMAN and WOLLMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

James Mallen appeals from his conviction of failing to disclose loans "for the accommodations of others" in answering a Bank Officer's Questionnaire submitted to the Federal Deposit Insurance Corporation in violation of 18 U.S.C. § 1001 (1982). Mallen was also convicted of failing to disclose that he had an interest in certain limited partnerships in a financial statement when, in fact, he knew that he had such interests in violation of 18 U.S.C. § 1014 (1982). The district court set aside the jury's conviction on this latter count on the ground that the indictment failed to sufficiently allege a violation of the statute and the United

States appeals from this ruling. Mallen argues that there was insufficient evidence to support his conviction as his understanding of "accommodation loans" was such that his failure to disclose them was not willful. He also claimed error in the court instructions and the admission of evidence. We affirm the convictions on both counts.

In April, 1980, Lee Nikolas approached Mallen, President of the Farmers State Bank of Kanawaha, Iowa, about investing in certain real estate projects. When Nikolas could not raise sufficient capital, it was decided that Elmwood Limited Partnership (Elmwood) would be formed, with Nikolas as the general partner. Mallen, as well as Nikolas, solicited individuals to invest as limited partners in Elmwood and the Farmers State Bank made loans to a number of these investors for the purpose of investing in Elmwood. According to Elmwood's Certificate of Limited Partnership, one of the limited partnership shares was held by Nikolas, as agent. No disclosure was made that Nikolas held the share for Mallen and a partnership he formed, Mallen, et al., consisting of himself and four other directors of the Bank.

Farmers State Bank never loaned money to Elmwood directly. Instead, the bank loaned money on a number of occasions to Carl Martin, William Dahl and Robert and William Shipman, limited partners of Elmwood. After being told by Mallen that the loans were the responsibility of Elmwood, these limited partners signed bank notes in their own names. The loan proceeds were deposited in the individual partners' checking accounts and then immediately transferred to Elmwood's checking account. The notes had stated "investment" and "operating" purposes, although the proceeds were used to pay Elmwood's operating expenses and other obligations.[1] There was evidence that Mallen devised this method of funding Elmwood's day-to-day

monetary needs by making loans to the limited partners and that he prepared the loan documents.

Elmwood filed bankruptcy in December, 1982. The limited partners were sued on their notes and had judgment entered against them and they in turn filed suit against the Bank, the directors and Mallen. This led to the FDIC discovering Mallen's involvement with Elmwood and the extent of the loan transactions.

In annual 1981 and 1982 FDIC examinations, the FDIC reviewed Mallen's individual financial statements. These statements, signed in January of 1981 and 1982 and prepared by Mallen, made no reference to his personal investment in Elmwood. In addition, Question 5 of a Bank Officer's Questionnaire required Mallen to: "[l]ist all extensions of credit made since last examination for the accommodation of others than those whose names appear on the bank's records or on credit instruments in connection with such extensions." In response to this question, Mallen disclosed a loan to an individual for the purpose of his incorporated sand and gravel business, but made no reference to any of the loans made to the Elmwood limited partners for the purpose of paying the expenses and obligations of the Elmwood partnership. The Bank Officer's Questionnaire and Mallen's individual financial statement were required filings with the FDIC for bank officers.

About two months before Mallen answered the Officer's Questionnaire, he had also failed to disclose the Elmwood partners' loans on an identical question asked by state regulators and was told that the loans should have been disclosed. Mallen previously had earlier problems with a limited partnership interest and a lending limit violation, and state regulators had fined his bank for habitual lending limit violations.

---

1. Although the bank made several loans to the Elmwood limited partners the proceeds of which went to the Elmwood partnership, the specific loans referred to in the indictment included a $50,000 loan to Carl Martin on November 13, 1981; three $110,000 loans to Dahl,

Martin, and the Shipman brothers dated February 26, 1981; and a $26,500 loan to the Shipman brothers dated May 17, 1982. The first two loans had stated purposes of investment while the third left the purpose statement blank.

He told others that he did not want his interest in Elmwood known to federal regulators. There was evidence that an FDIC examiner had seen a typed settlement proposal in the bank's loan file of one of the other Elmwood limited partners, Clarence Brcka. The proposal referred to the Brckas giving the bank and Mallen a hold harmless agreement relating to Elmwood matters. Later, the examiner attempted to get a copy of the typed statement, but he found only a handwritten version, which he copied. A year later the FDIC subpoenaed the Brckas' loan file and the bank produced a third version of this agreement which had no reference to the hold harmless agreement for Mallen. Both the second and third versions of this agreement were in Mallen's handwriting.

Count I of the indictment charged Mallen with failing to disclose his interest in Elmwood or the Mallen partnership in the financial statements filed with the FDIC. Count II charged Mallen with failing to disclose in the Officer's Questionnaire the loans made to the limited partners for the purpose of paying Elmwood's various obligations and expenses. After a jury trial, Mallen was convicted on both counts. On its own motion, the district court set aside the conviction on Count I on the grounds that the indictment failed to sufficiently allege a violation of 18 U.S.C. § 1014.

On appeal Mallen argues that the evidence at trial was insufficient to support his conviction on Count II and that the district court erred in permitting evidence that the bank's financial condition had deteriorated and in instructing on reasonable doubt. The United States argues on cross-appeal that the district court erred in setting aside the conviction on Count I.

## I.

■ There is apparently no dispute concerning the basic facts recited above. Instead, the factual dispute centers on whether the failure to disclose the loans to the Elmwood partners as "accommodation loans" in response to Question 5 was intentional; that is, knowing, willful and done with the intent to defraud. *See* 18 U.S.C. § 1001.

In evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the government and give the government the benefit of all inferences that may reasonably be drawn from the evidence. It is for the jury, not a reviewing court, to evaluate the credibility of witnesses and to weigh their testimony. *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Hudson,* 717 F.2d 1211, 1213 (8th Cir.1983). A conviction may be based on circumstantial as well as direct evidence. *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954); *Hudson,* 717 F.2d at 1213. Willfulness, intent and guilty knowledge may be proven by circumstantial evidence alone and frequently cannot be proven in any other way. *Hudson,* 717 F.2d at 1213.

Mallen essentially maintains that he believed the loans in question were not "accommodation loans" and therefore he lacked the requisite "willful and knowing" intent to violate the statute. At trial, Mallen and Veldhouse, vice president of the bank, as well as Bruce Holmgren, an FDIC examiner, testified that the purpose of Question 5 is to advise the FDIC of who the ultimate beneficiary of a loan is so as to determine if there are any lending limit violations. Holmgren testified that lending limits are determined by adding the obligations of the borrowing customer of the bank with any obligations of others whose loan proceeds went to the borrowing customer.

Mallen and Veldhouse testified that they did not consider the loans to be accommodation loans for two reasons. First, the loans were made to individuals whose obligations were within the bank's lending limits. There was no need to add the loan

amounts to the loans of Elmwood because Elmwood received no direct loans from the bank and therefore was not a "borrowing customer" of the bank. Second, Mallen and Veldhouse testified that the three $110,000 loans were sold immediately to a correspondent bank. The loans were not on the bank's books and therefore they believed the loans did not need to be included in the response to Question 5 of the Officer's Questionnaire.

However, the government introduced testimony and evidence from which the jury could have inferred that Mallen's failure to disclose the loans in response to Question 5 was "willful and knowing." Mallen told several individuals that he did not want his interest in Elmwood known to FDIC, and there was evidence that Mallen attempted to conceal his and the bank's interest in Elmwood from the FDIC. For example, the notes which the three bank directors obtained from the bank to fund their investment in the Mallen partnership stated that the loans were obtained for "operating" rather than "investment" purposes. While Elmwood's Certificate of Limited Partnership revealed only that Nikolas held one of the limited partnership shares as "agent," he held the share "as agent" for a partnership Mallen formed, which consisted of Mallen and three other bank directors. The notes signed by the limited partners and prepared by Mallen also contained false purpose statements. None revealed that the loan proceeds were used to fund Elmwood; rather the stated purposes included such uses as "operating" or "investment." There was evidence that Mallen submitted an altered document to the FDIC in response to a subpoena issued for bank records. Mallen's personal financial statement submitted to the Bank and examined yearly by the FDIC did not reflect his interest in either the Mallen or Elmwood partnerships.

In addition to the evidence discussed above, the testimony of state bank regulators established that Mallen's failure to disclose the loans in response to Question 5 was knowing. Two months before Mallen answered the FDIC officer's Questionnaire, he had failed to disclose the loans in response to an identical question in a state examination, and state regulators informed him that he had to disclose the Elmwood-related loans. From this testimony, a jury could reasonably infer that Mallen, a bank president, knew the loans should have been disclosed in response to the question in the Bank Officer's Questionnaire.

Finally, testimony established a motive for Mallen's failure to disclose the loans. In 1979, Mallen was cited by the state for overextending his own line of credit because of his involvement in another limited partnership. In 1980, the Bank was fined for "continued and habitual violations of the lending statutes."

Our review of the record convinces us that there was substantial evidence supporting the jury's finding that Mallen willfully and knowingly concealed material facts in the officer's Questionnaire submitted to the FDIC in violation of 18 U.S.C. § 1001.

For similar reasons we reject Mallen's contention that Question 5 was ambiguous and therefore his response to the question cannot be willful and knowing. Mallen maintains that the term "accommodation loan" is ambiguous. Consequently, he argues that the government had the burden of negating the claim that he, in good faith, misunderstood the question. He argues that since the government failed to prove the meaning of the term "accommodation loan" it failed to meet its burden of proof and his conviction must be set aside. *See United States v. Steinhilber,* 484 F.2d 386, 389 (8th Cir.1973). However, Question 5 does not use the term "accommodation loan"; instead it asks for a disclosure of "[all loans] made * * * for the accommodation of others than those whose names appear on the bank records or credit instruments." We are satisfied this question is not ambiguous. The response called for by Question 5 was an issue for the jury to resolve. Mallen testified about why he an-

swered Question 5 as he did and the jury was instructed that the government must prove, beyond a reasonable doubt, that Mallen knowingly and willfully made a false statement. Although the evidence did not eliminate every possibility inconsistent with guilt, there was substantial testimony from which the jury could properly conclude that Mallen, a bank president, knew the loans should have been reported in response to Question 5 and that his failure to disclose the loans was willful.

## II.

■ Mallen also contends that the district court improperly admitted testimony that the Elmwood loans adversely affected the Bank's rating. Mallen argues that the court erred in admitting this testimony because it was not relevant, Fed.R.Evid. 402, or, if relevant, its probative value was outweighed by the danger of unfair prejudice. Fed.R.Evid. 403.

The admissibility of evidence is primarily a determination to be made by the district court, *United States v. Jones*, 687 F.2d 1265, 1267 (8th Cir.1982), and this court will not substitute its judgment unless there has been an abuse of discretion. *United States v. Abodeely*, 801 F.2d 1020 (8th Cir. 1986).

In order to obtain a conviction for making a false statement under 26 U.S.C. § 1001,[2] the government must prove, among other things, the statement's materiality. *See United States v. Hicks*, 619 F.2d 752, 754 (8th Cir.1980). To establish the materiality of a false statement the government must show that the statement had the capability of influencing the agency's exercise of its governmental function. *United States v. Richmond*, 700 F.2d 1183, 1188 (8th Cir.1983). Testimony established that one of the functions of the FDIC is to

ensure the soundness of banks. In order to monitor the condition of banks the FDIC has developed a rating system designed to reflect the overall condition of a bank and to determine risk to deposits, the need for supervision and the need to take action to correct problems. Thus, the testimony that the undisclosed loan transactions adversely affected the Bank's rating and that the condition of the Bank had deteriorated was plainly relevant to whether the alleged false statement had the capability to influence the FDIC's function. We conclude therefore this testimony was relevant to the issue of materiality and therefore properly admitted by the district court.

Mallen also maintains that due to Iowa's poor economy and the number of bank failures, the testimony that an Iowa bank suffered a decline in its financial condition is an emotional issue which the government offered only to appeal to the jury's emotions. To exclude relevant evidence, Fed. R.Evid. 403 requires that the probative value be substantially outweighed by the danger of unfair prejudice. The district court closely scrutinized the challenged evidence in a side-bar conference out of the presence of the jury. The court permitted only the evidence that, in general, the rating of the bank deteriorated and did not permit testimony of the specific decline in rating or the testimony that the numerical rating declined to a showing of "5," or "likely imminent failure." Thus, we cannot say the court abused its discretion in admitting this testimony.

Finally, Mallen contends that the district court erred in instructing the jury as to reasonable doubt. Mallen requested an instruction on reasonable doubt orally, rather than in writing as required by Fed.R. Crim.P. 30. Despite the absence of a writing, the record indicates that the district court was adequately informed of Mallen's

---

**2.** 18 U.S.C. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false,

fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

request and we will therefore consider it on appeal. *See United States v. Krapp*, 815 F.2d 1183, 1186–87 (8th Cir.1987). Nevertheless, we may dismiss this argument summarily, as the instruction given by the district court was taken from the Eighth Circuit's Model Criminal Jury Instructions § 3.11 (1985) (revised 1986) and the instruction has been specifically upheld by this court. *See United States v. Risken*, 788 F.2d 1361, 1371 (8th Cir.1986).

### III.

The district court, on its own motion, set aside the jury's conviction on Count I, concluding that the indictment failed to allege an essential element of section 1014 and was therefore defective.[3] Count I of the indictment charged that Mallen knowingly made:

> a materially false statement in an Individual Financial Statement, Form No. 645, submitted * * * to the Farmers State Bank, Kanawha, Iowa, a bank insured by the Federal Deposit Insurance Corporation, for the purpose of influencing the action of the Federal Deposit Insurance Corporation, in that James E. Mallen did not disclose in the statement that he had a financial interest in Mallen Et Al. or Elmwood Limited Partnership when, in truth and fact, as James E. Mallen well knew, he did have interests in such businesses.

This is in violation of 18 U.S.C. § 1014.

In setting aside the conviction, the court determined that there was no allegation that the action influenced related to an "application, advance, discount, purchase, repurchase agreement, commitment, or loan [etc.] as required by section 1014." *Williams v. United States*, 458 U.S. 279, 284, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767 (1982).

▍ An indictment is sufficient if it fairly informs the accused of the charges against him and allows him to plead double jeopardy as a bar to a future prosecution. *Hamling*, 418 U.S. at 117, 94 S.Ct. at 2907; *United States v. Helmel*, 769 F.2d 1306, 1322 (8th Cir.1985). It is not necessary that the indictment use the precise language used in the statute, as long as the indictment, by fair implication, alleges an offense recognized by the law. *See Hamling*, 418 U.S. at 117–18, 94 S.Ct. at 2907–08; *United States v. Joseph*, 781 F.2d 549, 554 (6th Cir.1986). An indictment is fatally insufficient when an essential element "of substance" is omitted, rather than one "of form" only. To determine whether an essential element has been omitted, a court may not insist that a particular word or phrase appear in the indictment when the element is alleged "in a form" which substantially states the element. *United States v. Czeck*, 671 F.2d 1195, 1197 (8th Cir.1982); *United States v. Camp*, 541 F.2d 737, 739–40 (8th Cir.1976). Although the sufficiency of an indictment is a jurisdictional issue which may be considered at any time, Fed.R.Crim.P. 12(b)(2), when an indictment is challenged for the first time after a verdict, it will be liberally construed in favor of sufficiency. *Joseph*, 781 F.2d at 554. There will be no reversal absent prejudice unless the indictment cannot, within reason, be construed to charge a crime. *Joseph*, 781 F.2d at 554.

▍ It is true that the indictment does not expressly state that the false statement was made to influence the FDIC action in connection with a loan or upon any other transaction specified in 18 U.S.C. § 1014.

---

**3.** 18 U.S.C. § 1014 provides:
   Whoever knowingly makes any false statement or report * * * for the purpose of influencing in any way the action of [certain enumerated financial institutions, among them banks whose deposits are insured by the Federal Deposit Insurance Corporation and the Federal Deposit Insurance Corporation itself] *upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment or loan or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor,* shall be fined not more than $5000 or imprisoned not more than 2 years, or both. (Emphasis added.)

However, the indictment refers to Form 645, Mallen's Individual Financial Statement, which states, *"For the purpose of procuring credit from time to time*, I furnish the foregoing as a true and accurate statement of my financial condition ..."* (emphasis added). The reference to Form 645, coupled with the citation to the charging statute, 18 U.S.C. § 1014, makes it clear that Mallen's false statement was made for the purpose of influencing the FDIC in connection with a loan. *See Czeck*, 671 F.2d at 1197 (the term "Special Agent" coupled with the citation to the federal statute makes it clear that a federal officer was assaulted in performance of his duties); *cf. United States v. Camp*, 541 F.2d at 740–41 (mere citation to the charging statute is insufficient to supply a missing element of an offense). Although the indictment might have been more complete in alleging the type of transaction in which Mallen attempted to influence the actions of the FDIC, it fairly put Mallen on notice of the charge against him. The indictment was sufficient to allow Mallen to prepare his defense and to plead double jeopardy to any future prosecution. We conclude that Count I of the indictment was sufficient.

We remand with instructions that Mallen's conviction on Count I be reinstated, and Mallen be sentenced on that count. We affirm the conviction on Count II.