# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2028

_____

| | |
|---|---|
| United States, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of South Dakota |
| Mark White, | * |
| | * |
| Appellant. | * |

_____

Submitted:  October 19, 2000

Filed:  February 23, 2001

_____

Before McMILLIAN, BOWMAN and LOKEN, Circuit Judge.

_____

McMILLIAN, Circuit Judge.

Mark White appeals from a final judgment and sentence entered in the United States District Court[1] for the District of South Dakota upon a jury verdict finding him guilty of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1).  United States v. White, No. 99CR50033-002 (D.S.D. Apr. 10, 2000) (judgment).  For reversal, White argues that the district court (1) erred in denying his

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

motion to dismiss the indictment, (2) erred in denying his motion for judgment of acquittal based on insufficiency of the evidence, (3) abused its discretion in denying his motion for a new trial based on prosecutorial misconduct, and (4) clearly erred at sentencing in finding that he was not a minor participant in the drug conspiracy. For the reasons discussed below, we affirm the judgment of the district court.

## Jurisdiction

Jurisdiction in the district court was proper based upon 18 U.S.C. § 3231. Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

## Background

On April 28, 1999, a federal grand jury indicted Mark White, charging him with conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The indictment read:

> The Grand Jury charges: Beginning at an unknown time, but not later than March, 1996, and continuing through October, 1996 at Rapid City, in the District of South Dakota, and elsewhere, the defendants Dennis Lapp and Mark White, did combine, conspire, confederate, and agree with one another and with others known and unknown to the Grand Jury, to possess, with the intent to distribute, and to distribute, methamphetamine, a schedule II controlled substance, all in violation of 21 U.S.C. §§ 846 and 841(a)(1).

White did not move to dismiss the indictment before trial and entered a plea of not guilty.

The evidence at trial, briefly summarized in a light supporting the verdict, showed the following. Mark White resided in Hermiston, Oregon, and was a longtime friend of Patrick Mitchell. Mitchell had been a user and small-time dealer of methamphetamine when he lived in Oregon, and began to buy and sell methamphetamine in larger quantities after moving to South Dakota. Mitchell's drug business involved driving, usually with other people at the wheel, between South Dakota and the west coast. Mitchell used his cell phone on these trips "to make sure the deal was good" and that "all the money and drugs were in the store."

White was involved in four of Mitchell's known drug transactions. In their first transaction, Mitchell met White at a Dairy Queen, where White worked. Dana Chaffee, Mitchell's ex-wife, who accompanied Mitchell on that occasion, testified at trial that she and Mitchell did not possess methamphetamine before meeting with White, but did possess methamphetamine immediately afterwards. Chaffee further testified that she did not think Mitchell could have obtained the methamphetamine from a source other than White.

In the second transaction, Chaffee and Mitchell were at White's house when Mitchell and White went into another room and returned with methamphetamine. Mitchell, Chaffee, White, and White's girlfriend then snorted lines of methamphetamine together. Chaffee stated that "when we arrived we didn't have any drugs and when we left we did." Mitchell confided to Chaffee that he had intended to buy drugs from White on this occasion.

Dennis Lapp, one of Mitchell's drug suppliers, testified regarding the third transaction, which occurred in July 1996. Lapp, unable to personally supply the full quantity of drugs Mitchell had requested, drove Mitchell from Pasco, Washington, to the Dairy Queen in Hermiston, Oregon. Lapp watched Mitchell enter the Dairy Queen and then exit twenty minutes later with another man who left the Dairy Queen on a bicycle. Lapp and Mitchell followed the man on the bicycle to a house about five

-3-

blocks away. Mitchell went into the house and when he came out he was no longer concerned with obtaining methamphetamine and asked Lapp to drive him back to Pasco, Washington. Lapp could not identify White as the man on the bicycle, but White lived four or five blocks from the Dairy Queen and did not have a driver's license so he normally rode a bicycle.

Regarding the fourth transaction, Dick Mashek, a driver and drug tester for Mitchell, testified that during one road trip to acquire drugs they were unable to obtain the anticipated amount of methamphetamine from Lapp. Mitchell said that "he had one more idea on where to get some" and referred to a friend named "Mark," meaning White. Mitchell and Mashek then went to White's house, where White began making telephone calls. Soon after, a man arrived at the house, whom Mashek drove to an apartment complex. Mashek then went back to White's house and fell asleep. When he woke up, Mitchell informed Mashek that he was ready to leave, which Mashek understood to mean that Mitchell had found more methamphetamine. Mashek also remembered that "he [Mitchell] handed me a package . . . and handed me some other stuff and told me to try this stuff out to know if it was any good." It was Mitchell's habit to have Mashek test only newly-acquired drugs.

The government also introduced evidence of Mitchell's phone records at trial, because Mitchell habitually used his cell phone to finalize drug transactions. Phone tolls showed that Mitchell made twenty-four calls to the Dairy Queen, received twenty-seven calls from the Dairy Queen, and made twenty-four calls to White's home phone. In addition, the government submitted a ledger in which Mitchell and Chaffee regularly kept track of drug debts. Chaffee testified that a $1,000 increase in debt in the ledger equated to approximately an ounce of methamphetamine. Chaffee also identified the repeated entries of "MW" in the drug ledger as referring to White. According to Chaffee, Mitchell did not collect White's debts because he was "his good friend" and helped Mitchell "in other ways as it related to the distribution."

-4-

White testified at trial that, during the time covered by the indictment, he did not participate in either drug usage or drug transactions with Mitchell. White characterized his contact with Mitchell during that time as nothing more than friendship. White denied the allegations made by Chaffee, Mashek, and Lapp in their testimony against him. White asserted that while he did use drugs prior to his drug rehabilitation in 1992, he never sold drugs. He further admitted that he slipped and used drugs four times after he left rehab, but that those occasions occurred after 1996, and were therefore not covered under the time frame of the indictment.

At the end of the two-day trial, the prosecutor gave his closing argument, which included the following comments regarding White's testimony: (1) "That's the problem of lies, ladies and gentlemen. Lies are a lot tougher to keep straight and keep coordinated than a simple truth," (2) "Is he telling you the truth, ladies and gentlemen, that he never dealt dope, . . . ? I submit he is not. I submit he is lying bold face to you when he tells you he knows [about another source for the drugs in question]," and (3) "[White was unable to remain consistent in his testimony and] tried to deny [his drug usage] to you on the stand under oath, tried to lie to you and tell you he had never used [methamphetamine] since 1961 (sic) through rehab, that goes to his credibility. If he can suggest to the government that witnesses are willing to lie, what kind of lies do you think he would tell in order to evade responsibility entirely?" Counsel did not object to these statements at trial.

During a conference to formulate jury instructions, White's counsel moved for judgment of acquittal based on the prosecution's failure to state the elements of the crime, including the fact that there was no evidence that White knowingly and voluntarily participated in the conspiracy. The district court, resolving the testimony in the light most favorable to the government, as the nonmoving party, denied the motion after determining that the government had adequately proved the conspiracy's existence, and therefore only needed slight, circumstantial evidence to connect White to the conspiracy and support a conviction. The district court also overruled hearsay

-5-

objections based on various statements and exhibits, finding the statements and exhibits admissible because they were made by co-conspirators and therefore fell under the exception to the hearsay rule found in Fed. R. Evid. 801(d)(2)(E).

On November 17, 1999, the jury found White guilty on both counts, and on November 24, 1999, White moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(b). In the alternative, White moved for a new trial pursuant to Fed. R. Crim. P. 33. In the motions, White argued that (1) the government failed to prove his involvement in a conspiracy beyond a reasonable doubt, (2) the government engaged in prosecutorial misconduct by failing to provide the drug ledger to White's counsel and by branding him a liar during closing arguments, and (3) the indictment was insufficient and confusing to the jury. United States v. Lapp and White, No. CR99 50033-01-02, (D.S.D. Nov. 24, 1999)(motion for judgment of acquittal and/or new trial). The district court denied both motions on January 12, 2000. United States v. White, No. CR 99-50033-02, (D.S.D. Jan. 12, 2000).

On April 10, 2000, the district court held a sentencing hearing. During the hearing, the district court lowered the quantity of drugs used to calculate White's base offense level under the Sentencing Guidelines in order to reflect the amount of narcotics reasonably foreseeable by White for his participation in the conspiracy. The district court determined that White was not a minor or minimal participant in the conspiracy, noting that "[t]he direct evidence and any inference logically flowing from that direct evidence were that Mr. White was indeed -- along with Patrick Mitchell who is deceased -- the Oregon source of the methamphetamine that came into Rapid City. He was indeed a part of this multiple-party drug conspiracy." As a result, the district court denied White's motion for a downward adjustment based upon Sentencing Guidelines § 3B1.2 for a mitigating role of minor or minimal participant. After concluding that White testified falsely at trial, the district court considered applying a two-level enhancement for obstruction of justice under USSG § 3C1.1, but chose not to apply the enhancement because the Pre-Sentence Investigation Report did not recommend it.

-6-

The district court sentenced White to 78 months in prison and four years supervised release.  This appeal followed.

## Discussion

Sufficiency of the Indictment

White contends that the indictment was insufficient because (1) it did not inform him of the specific time period in which he allegedly participated in the drug conspiracy and (2) it did not recite the elements of the charged offense, conspiracy to possess and distribute methamphetamine.  We disagree.

Generally we review a challenge to the sufficiency of an indictment *de novo,* See United States v. O'Hagan, 139 F.3d 641, 651 (8th Cir. 1998), but Federal Rule of Criminal Procedure 12(b)(2) requires such challenges to be raised prior to trial, and a failure to do so constitutes a waiver.  Fed. R. Crim. P. 12(f); United States v. Davis, 103 F.3d 660, 674 (8th Cir. 1996).  However, the claim that the indictment fails to state an offense may be raised at any time.  United States v. Rosnow, 9 F.3d 728, 729 (8th Cir. 1993).  Therefore, although White did not raise this issue prior to trial, it is not precluded from our review on this appeal.  Nonetheless, we apply a more deferential standard of review, because "[w]hen an indictment is challenged after jeopardy attaches, it is upheld 'unless it is so defective that by no reasonable construction can it be said to charge the offense.'"  United States v. Pennington, 168 F.3d 1060, 1064-65 (8th Cir. 1999) (citing United States v. Just, 74 F.3d 902, 904 (8th Cir. 1996)); United States v. Davis, 103 F.3d 660, 675 (8th Cir. 1996) ("an indictment that is challenged after jeopardy has attached will be liberally construed in favor of sufficiency").

We will consider an indictment sufficient "if it fairly informs the accused of the charges against him and allows him to plead double jeopardy as a bar to a future prosecution." United States v. Mallen,  843 F.2d 1096, 1102 (8th Cir. 1998).  Usage

of a particular word or phrase in the indictment is not required as long as we can recognize a valid offense and the form of the allegation "substantially states the element[s]." Id. In fact, we will find an indictment insufficient only if an "essential element 'of substance' is omitted." Id. (citation omitted).

In the present case, the indictment stated:

> The Grand Jury charges: Beginning at unknown time, but not later than March, 1996, and continuing through October, 1996 at Rapid City, in the District of South Dakota, and elsewhere, the defendants Dennis Lapp and Mark White, did combine, conspire, confederate, and agree with one another and with others known and unknown to the Grand Jury, to possess, with the intent to distribute, methamphetamine, a schedule II controlled substance, all in violation of 21 U.S.C. §§ 846 and 841(a)(1).

Reasonably construed, the words "combined, conspired, confederated, and agreed" adequately set forth the charge of conspiracy, especially combined with the references to 21 U.S.C. §§ 846 and 841(a)(1). We hold that this language was sufficient for the appellant "to prepare his defense and to plead double jeopardy to any future prosecution." Mallen, 843 F.3d at 1103. Despite the lack of specificity concerning the exact dates of the conspiracy, the indictment charged a specific conspiracy to possess and distribute methamphetamine in Rapid City, South Dakota, during a seven-month time frame.[2] As a result, we hold that the indictment reasonably alleged the charge of conspiracy with sufficient specificity to notify White of the charges against him and to allow him to plead the defense of double jeopardy as a bar to a future prosecution.

---

[2]The district court directly addressed this issue during a meeting with counsel in response to a jury interrogatory. The district court decided, without objection from either side, to interpret the indictment to mean that the jury could find the elements of conspiracy independently of White's involvement, and then determine whether White joined the conspiracy during the May-October 1996 time frame explicitly mentioned in the indictment.

Sufficiency of the Evidence of Conspiracy

White argues that the evidence submitted at trial, consisting of the testimony of co-conspirators and circumstantial evidence, but no direct evidence of him buying, selling, or possessing drugs, was insufficient to persuade a reasonable jury beyond a reasonable doubt that he was involved in a conspiracy to distribute methamphetamine. We disagree.

Although the government originally carried the burden to prove beyond a reasonable doubt that White knowingly and voluntarily participated in an agreement to distribute methamphetamine, United States v. Parker, 32 F.3d 395, 399 (8th Cir. 1994), we review the jury's verdict for plain error. United States v. Vig, 167 F.3d 443, 447 (8th Cir. 1999). We interpret the evidence in the light most favorable to the verdict, giving the government the benefit of all reasonable inferences that can logically be drawn from the evidence. Id. As long as "there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendants guilty beyond a reasonable doubt," we will not disturb the jury's verdict. Id.

To convict a defendant of conspiracy, the government must prove beyond a reasonable doubt the following elements: (1) there was a conspiracy with an illegal purpose, (2) the defendant knew about the conspiracy, and (3) the defendant knowingly became a part of it. See United States v. Mosby, 177 F.3d 1067, 1069 (8th Cir. 1999); United States v. Bass, 121 F.3d 1218, 1220 (8th Cir. 1997). White contends that the government did not present sufficient evidence to prove that he knew about the conspiracy and actively engaged in it.

Contrary to White's arguments, "[a] conviction may be based on circumstantial as well as direct evidence." United States v. Erdman, 953 F.2d 387, 389 (8th Cir. 1992). In fact, knowledge frequently cannot be proven except by circumstantial

evidence, and the determination often depends on the credibility of the witnesses, as assessed by the factfinder. See id. at 390. In the present case, the jury believed the testimony of three witnesses who each linked White to the drug conspiracy. Chaffee testified that, on two separate occasions, Mitchell possessed no methamphetamine before he met with White, but had some immediately thereafter. Lapp attributed Mitchell's acquisition of methamphetamine on one occasion to a man who left a Dairy Queen and rode a bicycle about five blocks away. White, a friend of Mitchell's, worked at that same Dairy Queen, habitually rode a bicycle to and from work, and lived five blocks away. Mashek testified that Mitchell did not have the desired amount of methamphetamine until a meeting with his friend named "Mark," immediately after which Mitchell gave Mashek some new methamphetamine to test. In addition, phone records showed many phone calls between Mitchell's cell phone, the Dairy Queen where White worked, and White's home phone, all coinciding with Mitchell's road trips taken for the purpose of acquiring methamphetamine. Chaffee testified that Mitchell used his cell phone to solidify his drug deals. The government also submitted a drug ledger, in which the initials "MW," referring to White, indicated that White had outstanding drug debts that were not repaid. Chaffee testified that the debt was forgiven because White helped Mitchell "in other ways as it related to the distribution."

The evidence presented at trial is sufficient to convince reasonable jurors that White had knowledge of the drug conspiracy and knowingly participated in it, especially because "[o]nce the government establishes the *existence* of a drug conspiracy, only slight evidence linking the defendant to the conspiracy is required to prove the defendant's involvement and support the conviction. United States v. Jenkins, 78 F.3d 1283, 1287 (8th Cir. 1996) (emphasis added). The government presented sufficient evidence of Mitchell's participation in the drug conspiracy and adequately demonstrated White's knowledge of and involvement in the conspiracy on at least four occasions. Viewing this evidence in the light most favorable to the guilty verdict, we hold that the evidence was sufficient for the jury to find White guilty beyond a reasonable doubt.

Prosecutorial Misconduct

White next argues that the prosecutor committed misconduct by calling him a liar three times during the closing argument, which prejudicially affected White's right to a fair trial. Specifically, White objects to the following statements made by the prosecutor: (1) "That's the problem of lies, ladies and gentlemen. Lies are a lot tougher to keep straight and keep coordinated than a simple truth," (2) "Is he telling you the truth, ladies and gentlemen, that he never dealt dope, . . . ? I submit he is not. I submit he is lying bold face to you when he tells you he knows [about another source for the drugs in question]," and (3) "[White was unable to remain consistent in his testimony and] tried to deny [his drug usage] to you on the stand under oath, tried to lie to you and tell you he had never used [methamphetamine] since 1961 (sic) through rehab, that goes to his credibility. If he can suggest to the government that witnesses are willing to lie, what kind of lies do you think he would tell in order to evade responsibility entirely?"

By not objecting to the prosecutor's conduct at trial, White failed to properly preserve the issue for appellate review. See United States v. Benitez-Meraz, 161 F.3d 1163, 1167 (8th Cir. 1998); Fed. R. Crim. P. 52(b). Because White forfeited the issue, "we lack authority to consider the question unless (1) the district court committed an error, i.e., deviated from a legal rule, (2) the error is plain, i.e., clear under current law, and (3) the error affected [White's] substantial rights." United States v. Montanye, 996 F.2d 190, 192 (8th Cir. 1993). Furthermore, our authority to correct a forfeited error is discretionary, and we will "not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotations and alterations omitted).

Under current law, a two-part test determines whether prosecutorial misconduct has occurred: first, the prosecutor's conduct or remarks must have been improper, and

-11-

second, the remarks or conduct must have prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial. United States v. Beeks, 224 F.3d 741, 745 (8th Cir. 2000). As a general rule, a prosecutor may not express a personal opinion about a defendant's veracity. See United States v. Shoff, 151 F.3d 889, 893 (8th Cir. 1998); United States v. Papajohn, 212 F.3d 1112, 1120 (8th Cir. 2000) (quoting United States v. Kerr, 981 F.2d 1050, 1053 (9th Cir 1992)). Instead, the prosecutor must limit the closing argument to "the evidence and the reasonable inferences that may be drawn from it." United States v. Robinson, 110 F.3d 1320, 1327 (8th Cir. 1997). Nonetheless, the prosecutor may use "colorful pejoratives" and argue a personal interpretation of the evidence. See Shoff, 151 F.3d at 893.

In the present case, we do not find circumstances warranting reversal on the basis of prosecutorial misconduct. While the prosecutor's comments are questionable, they do not rise to the level of plain error affecting White's substantial rights. In closing arguments, the prosecutor outlined the evidence and highlighted the reasons he believed White's testimony was not credible. It is permissible for a prosecutor to interpret the evidence as indicating that the defendant is not telling the truth. See Papajohn, 212 F.3d at 1120 (finding that the prosecutor permissibly stated a belief that the evidence showed the defendant was guilty); see also United States v. Adams, 799 F.2d 665, 670 (11th Cir. 1986) (distinguishing between impermissible statements proclaiming the defendant to be guilty and permissible statements indicating a belief in the defendant's guilt based upon the evidence).

In any event, we choose not to employ the discretion conferred by Rule 52(b) because we do not characterize this as one of "'those circumstances in which a miscarriage of justice would otherwise result.'" Olano, 507 U.S. at 736 (quoting United States v. Young, 470 U.S. 1, 15 (1985)). As a result, we hold that White has failed to carry his burden in establishing that the district court plainly erred by allowing the prosecutor's comments.

-12-

Sentencing Reduction for Role as Minor Participant

White argues that the district court clearly erred in not granting him a two-level reduction in offense level for being a minor participant in the conspiracy, as allowed by the United States Sentencing Guidelines Manual § 3B1.2 (b)(1999) (U.S.S.G.). White contends that he was at most a minor participant in the conspiracy because the evidence submitted at trial did not reflect serious involvement on his part. Further, White argues that he was less culpable than his alleged co-conspirators, who each played a more active role in the conspiracy. The government contends that White does not qualify for a sentencing reduction because he was not simply a courier, as he arranged purchases of methamphetamine. We agree.

A defendant who is a "minor participant" in a criminal activity is entitled to a two-level reduction in offense level during sentencing. Id. A "minor participant" is defined as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." Id., cmt. n.3. As the defendant, White bears the burden of proof regarding whether he is entitled to this reduction. United States v. Surratt, 172 F.3d 559, 567 (8th Cir. 1999). We review the district court's factual findings regarding a participant's role in the offense for clear error. Id.

We determine the propriety of a downward adjustment for a minor participant role "by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense." United States v. Belitz, 141 F.3d 815, 818 (8th Cir. 1998) (citing United States v. Goebel, 898 F.3d 675, 677 (8th Cir. 1990)). In addition, "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.2, cmt. n.1.

In this case, the district court rejected White's contention that he was among the least culpable of those involved in the conspiracy based on specific fact findings. Instead, the district court found that White was "the Oregon source of the methamphetamine that came into Rapid City," and that "[h]e was indeed a part of this multiple-party drug conspiracy." Sentencing Transcript at 17. The district court further stated that White "was plainly [not] among the least culpable of those involved in the conspiracy," finding the co-conspirators who testified more credible than White, whom the district court suspected of perjury. Sentencing Transcript at 18. Because the district court concluded from the testimony that White understood the scope of the enterprise and that he played a central role in the conspiracy, we hold that the district court did not clearly err in finding White was not a minor participant.

Accordingly the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.