UNITED STATES of America Plaintiff

v.

Thomas JAY [sic] T.J. Hively, Wesley John Butch Ketz, Jr., Gary Wayne Edwards Defendants

No. 4:00CR00187–01 GH.

United States District Court, E.D. Arkansas, Western Division.

July 30, 2003.

H.E. (Bud) Cummings, Esq., United States Attorney, By Patrick C. Harris, Esq., Angela S. Jegley, Esq. and Todd L. Newton, Esq., Assistant United States Attorneys, Little Rock, for Plaintiffs.

Samuel A. Perroni, Esq., Perroni & James, Attorneys At Law, Little Rock, for Defendants.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

After seven weeks of trial, the jury was unable to reach a unanimous verdict on the remaining 16 counts of a 64 count Indictment charging separate defendant Thomas T.J. Hively (Hively) with acts of racketeering, mail fraud, money laundering and extortion.[1] Judge Moody discharged the jury on March 15, 2002, and took Hively's motions for judgment of acquittal on the remaining 16 counts under advisement. The parties were directed to file supplemental briefs on or before March 20, 2002.

On May 6, 2002, Judge Moody recused in this action and the case was assigned to the Honorable Stephen M. Reasoner who also entered an order of recusal and the action was assigned to the undersigned. Currently pending before the undersigned are Hively's motions for judgment of acquittal on the remaining 16 counts. For the reasons discussed below, Hively's motions are denied.

### I.  BACKGROUND

On September 13, 2002, the Federal Grand Jury indicted Defendants Thomas J. "T.J." Hively (Hively), Wesley John "Butch" Ketz, Jr., (Ketz) and Gary Wayne Edwards (Edwards) on violation of Title 18 U.S.C. § 1962(c)from on or about January, 1993 through December, 1998 (Count I).  Count I asserts that defendants were associated with the Sixteenth Judicial District Prosecuting Attorney's Office for the primary purpose of enforcing the criminal laws of the State of Arkansas within the Sixteenth Judicial District.  In reality, according to the assertions in the Indictment, defendants used the Prosecuting Attorney's Office as a means to obtain monetary benefits for themselves and others and to participate in and conceal illegal activities.

Hively was indicted in Counts 2–13 on violation of Title 18 U.S.C. § 1341 from on or about January, 1993, through April, 1998.  Counts 2–13 assert that Hively together with other individuals knowingly and intentionally devised, and intended to devise, a scheme and artifice to defraud the State of Arkansas and the United States Department of Health and Human Services by making and causing to be made false and fraudulent representations, knowing that such representations would be false and fraudulent when made, and made use of the mail in executing the scheme.

Hively and Ketz were indicted in Counts 14–15 on violation of 18 U.S.C. §§ 1341 and 2 from on or about January, 1993, through October, 1997.  Counts 14 and 15 assert that Hively and Ketz aiding and abetting one another knowingly and intentionally devised, and intended to devise a scheme and artifice to defraud the State of Arkansas and the United States by making and causing to be made false and fraudulent representations, knowing that such representations would be false and fraudulent when made, and made use of the mail in executing and attempting to execute the scheme.

Hively and Ketz were indicted in Counts 16–34 on violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 on or about March, 1996 through October, 1997.  Counts 16–34 assert that Hively and Ketz aiding and abetting one another engaged in financial transactions with proceeds obtained from one or more of the mail frauds set forth in Counts 14–15 knowing that the proceeds came from unlawful activity and

---

1. The Honorable James M. Moody was the presiding judge.  Defendants' cases were sev- ered and a jury trial in Hively's case commenced on January 24, 2002.

1054

that the transactions were designed in whole or part to conceal the nature, source, ownership or control of the proceeds.

Hively and Ketz were indicted in Counts 35–62 on violation of 18 U.S.C. § 1341 on or about January, 1995 through January, 1998. Counts 35–62 assert that Hively and Ketz aiding and abetting one another, knowingly and intentionally devised and intended to devise, a scheme to defraud Izard County, and the Cities of Melbourne and Calico Rock, by making false and fraudulent representations, knowing that such representations would be false and fraudulent when made, and knowingly caused to be delivered by mail items involved in the scheme.

Hively and Edwards were indicted in Count 63 on violation of 18 U.S.C. § 1951(a) on or about June 1995, to on or about November 1997. Count 63 asserts that Hively and Edwards conspired with each other to affect interstate commerce by extortion, in that they conspired to extort property not due and owed to them individually or by virtue of their office or employment from John Milton Northrop, with his consent, which consent had been induced by wrongful use and threat of the use of force, violence, and fear and under color of official right.

Hively and Edward were indicted in Count 64 on violation of 18 U.S.C. §§ 1951(a),1962 and 1963 on or about December, 1996. Count 64 asserts that Hively and Edwards conspired with each other to affect interstate commerce by extortion, in that they did conspire to extort property, that is approximately 87 acres of real property not due and owed to them individually or by virtue of their office or employment, from Willie Clark and Kathy Sampson Clark, with their consent, which consent had been induced by wrongful use and threat of use of force, violence, fear, and under color of official right.

As previously noted, Judge Moody severed Hively's case and his jury trial began January 24, 2002.

At the close of the Government's case-in-chief, Hively filed the following motions on March 1, 2002:

1. Motion for Judgment of Acquittal as to Counts 2–3, 14–15, 16–34 and 35–62. Hively alleged that in viewing the evidence in a light most favorable to the Government, that Government has failed to offer any evidence of any "intent to harm" and that the intent to harm is an essential element of the alleged offenses.

2. Motion for dismissal of Counts 14–15 (Drug Task Force Mail Fraud Counts) and Racketeering Acts 13–14, or in the alternative, Judgment of Acquittal. Hively argues that the counts "are devoid of any details regarding what the misrepresentations actually were that Hively made in the alleged frauds, that certain representations attributed to Hively that the Indictment claims to be 'false and fraudulent' are—on their face and as alleged in the Indictment— neither false nor fraudulent." Accordingly, argues Hively, the Government has failed to state mail fraud offenses. Hively further alleged that even if the Government alleged mail fraud offenses, the evidence is insufficient to demonstrate that Hively devised a scheme and artifice to defraud through the use of the false and fraudulent representations alleged.

3. Motion for Judgment of Acquittal as to Counts 2–13 (Child Support Enforcement Mail Fraud) and Racketeering Acts 1–2 in Count I. Hively argues that the Government failed to present sufficient evidence demonstrating that specific mailings which it identified as underlying the alleged fraud in any way furthered the fraud as required under the federal mail fraud statute; and that the Government failed to present sufficient evidence proving that

Hively ever made any false or fraudulent misrepresentation with respect to work performed on child support enforcement matters.

4. Motion for Judgment of Acquittal as to Counts 63 and 64 (Northrop and Clark/ Clark Extortion Counts) and Racketeering Acts 43a (Northrop) and 44a (Clark/Clark). Hively argues that these counts and racketeering acts allege that Hively violated the Hobbs Act; and that a Hobbs Act violation requires proof of an adverse effect on interstate commerce which the Government has failed to prove.

5. On March 4, 2002, Hively filed his alternative Rule 29 Motion for Judgment of Acquittal as to Counts 14 and 15 asserting ambiguity. Hively argues that the "Government has failed to introduce evidence sufficient to establish the falsity of the alleged false and fraudulent representations contained in the indictment"; and that the allegations are ambiguous.

The Government on March 4, 2002, responded to Hively's motions as follows:

1. With respect to the motion discussing Counts 2–13, 14–15, 16–34 and 35–62, the Government asserts that Hively's "intent to defraud is established by the means and manner in which the scheme to defraud were executed; that the evidence proffered by the Government establishes beyond a reasonable doubt that the State of Arkansas and Izard County were deprived of the right to control the spending of public funds; that Hively received a salary from the State of Arkansas to perform his duties as prosecuting attorney for the 16th Judicial District and there was no legitimate reason to pay him twice for his work by the State of Arkansas, Izard County, the Department of Health and Human Services and the Office Child Support Enforcement." Accordingly, the Government argues, that the Government has made more than a minimal showing of a scheme to defraud as well as demonstrating "intent to defraud."

2. As to Hively's Motion for Dismissal of Counts 14–15 (Drug Task Force Mail Fraud) and Racketeering Acts 13–14, or in the alternative, Judgment of Acquittal for failure to state an offense, the Government's response in opposition asserts that whether treated as a motion to dismiss or for judgment of acquittal, Hively's motion is without merit; that Hively ignores the entirety of paragraph 9 as well as other relevant paragraphs of the indictment and centers solely upon one isolated portion of the indictment, namely, paragraph 8 of counts 14–15; that when the counts are read fairly as a whole, "it is nothing short of ludicrous to assert that any element of the offense is missing from the face of the indictment;" and that the chain of events set forth in the counts demonstrate consciousness of guilt on the part of Hively and Ketz.

3. The Government's response in opposition to the motion for judgment of acquittal as to Counts 2–13 (Child Support Enforcement Mail Fraud) and Racketeering Acts 1–12 in Count I of the indictment asserts that the evidence reflects that the scheme to defraud with which Hively has been accused was clearly a continuing crime; he inherited a contract and entered into contracts to provide legal services for child support enforcement work which he did not do, yet, nevertheless, caused claims to be made for reimbursement during the course of five years and four months; that the evidence shows that Hively caused monthly claims to be made on his behalf for work which he did not do and that he was paid monthly; that the form used in making periodic reports has three columns; one for current quarter adjustments, prior quarter adjustments and next quarter estimates, which information is necessary to obtain a grant in succeeding

quarter; and that the mailing is a predicate for perpetuating the availability of funds and the perpetuation of Hively's scheme.

4. The Government's response in opposition to Hively's motion for judgment of acquittal with respect counts 63–64,states that with respect to both counts, the Prosecuting Attorney's Office for the 16th Judicial District was clearly engaged in activities that affected interstate commerce, given the fact that it contracted with the State of Arkansas for the Child Support Enforcement Unit services which necessarily involved monthly reimbursement billings, as well as other documents, being sent through the mails.

With respect to count 63 (racketeering act 43) pertaining to the Northrop extortion, the Government asserts that the evidence reflects that Northrop moved to Texas while his case was pending; that shortly after the execution of the search warrant on the Child Support Enforcement Unit, Edwards contacted Northrop in Texas to make arrangements for Edwards to travel to Texas to give Northrop the money that was supposedly left over from the sale of his property to Edwards and from the final disposition of his criminal charges; that Edwards flew to Dallas, Texas on November 11, 1997, and met Northrop at the airport, during which meeting he returned approximately $12,000 to Northrop.

Relative to count 64 (racketeering act 44) pertaining to the Clark extortion, the Government states that evidence established that during the time Willie Clark's second degree murder case was pending, Russ Staggs, an associate of Edwards, took Clark to Red Boiling Spring, Tennessee to live, and that Clark was brought back to Arkansas for a mental evaluation. Accordingly, asserts the Government, the Government has established interstate nexus.

As to the extortion issue, the Government argues that the evidence reflects that the only reason Northrop agreed to the discounted sale of his property to Edwards was because he thought he had no other choice if he wanted to avoid prison; that the evidence further reflects that Hively told Ellington that Northrop's case was a "bullshit case" and that he did not intend to prosecute it; that this conversation occurred after Ellington told Hively that Ellington had Edwards and Northrop in his office to discuss his potential representation of Northrop and that Edwards had told Ellington that Edwards had already talked with Hively about the case; that Willie Clark testified that he executed a Quitclaim Deed to Kathy Sampson Clark because Edwards told him to; and that Kathy Sampson Clark testified that she was afraid and concerned that she would end up being charged for conspiring with Willie Clark to murder Roy Fulbright if she refused to sign the Quitclaim Deed. Accordingly, the Government alleges that it has produced sufficient evidence of threatened use of force, use of economic fear, or action under color of official right to establish the extortion element.

On March 6, 2002, Judge Moody granted Hively's motion for Judgment of Acquittal of Count 13 (Racketeering Act 12 of Count I) and Counts 35–62 (Racketeering Acts 15–42 of Count I), but reserved a ruling on the remaining motions.

Thereafter, Hively presented a defense and at the close of Hively's case-in-chief, Hively renewed his motions for judgment of acquittal. Judge Moody granted the Rule 29 motion as to counts 16–34 and reserved a ruling on the remaining 16 counts. Hively's case was submitted to the jury. Three days after the submission, the jury advised Judge Moody that the jury was deadlocked on the remaining 16 counts. Judge Moody discharged the jury

and took Hively's motions under submission.

As previously noted, Judge Moody recused in this matter before issuing a ruling on Hively's Rule 29 motions as to the remaining 16 counts. This matter was assigned to the undersigned after Judge Reasoner also recused after the action was assigned to him.

## II. DISCUSSION

The standard that this Court must apply in ruling on Hively's motions for judgment of acquittal is whether the evidence proffered by the Government in support of its case is sufficient to warrant a jury to find Hively guilty of the charges beyond a reasonable doubt. *United States v. Huerta–Orozco*, 272 F.3d 561 (8th Cir.2001); See also: *United States v. Gomez*, 165 F.3d 650 (8th Cir.1999)(stating that a district court properly denies a motion for a judgment of acquittal if "there is substantial evidence justifying an inference of guilt irrespective of any countervailing testimony that may be introduced.")

A. Counts 2–12 ( Child Support Mail Fraud)

■ The Court is persuaded, after carefully reviewing the evidence offered by the Government in its case-in-chief, that there is sufficient evidence that would allow a reasonable jury to find Hively guilty beyond a reasonable doubt of Counts 2–12.

Dan McDonald, director of the Arkansas Office of Child Support Enforcement (OCSE)testified that the 16th Judicial District had a contract to provide child support services starting in 1993; that Arkansas law that governed the child support contracts provided that reimbursement was limited to actual costs incurred; that if Hively performed no work, he was not entitled to any compensation from the 16th Child Support Enforcement Unit (CSEU) even though he was the prosecuting attorney; and that quarterly reports were mailed to the Department of Health and Human Services in Dallas, Texas.

Lisa Farrier testified that she became a full-time employee for the Hively and Ketz Law Firm in January, 1993, and in April, 1993, Hively made her manager of the 16th Judicial District Child Support Enforcement Unit (CSEU); that Hively took over CSEU in January, 1993, when he became prosecuting attorney; that Hively instructed her to take a surplus amount money from the CSEU bank account and purchase a Certificate of Deposit at another bank; that she took $45,000 from the CSEU account; that later on, CSEU encountered financial problems which included a $34,000 overdrawn item on the CSEU account; that $15,000 was withdrawn from the CD to pay CSEU bills; that these financial problems caused her to overbill the State of Arkansas beginning in 1997; that while Hively did not instruct her do the overbilling, he did tell her "to do whatever had to be done to work the money problem out;" that the prosecuting attorney's office (as the contractor) was supposed to contribute 34% of each month's expenses, but that the prosecuting attorney's office never did so from April, 1993 through April, 1998; that checks were written to the Hively and Ketz Law Firm, deposited in the law firm account, and then a check was written from the firm account to Hively; that Vickie Warner, an associate at the Hively and Ketz Law Firm did most of the legal work, but she wrote no salary checks to Warner in 1993 and 1994; that Ketz did some legal work in Stone County in 1993 and 1994, but she did not write any checks to Ketz either; that Hively did a small percentage of the child support work, but she never wrote a check for child support work to anyone but Hively. Farrier testified further that she put information on the periodic form, even though it was not true, in order to receive

any money for the legal services, pursuant to memos received from the state office; and that Hively directed her to ensure that all workers were in their places working on child support matters when field manager Jim Passmore was going to be present.

Farrier testified that beginning in January 1998, Farrier and Patton met with Hively once a month and reviewed cases that had gone to court with Hively asking questions about the cases; that Case Review Documentation was completed and placed in the file to give the appearance that Hively had actually worked on the case.

Sue Patton, Hively's personal secretary, testified that she was not aware of Hively doing any legal work for the 16th Judicial District CSEU.

Accordingly, Hively's motion for judgment of acquittal of counts 2–12 is denied.

### B. Counts 14–15 (Drug Task Force Mail Fraud)

As previously noted, at the close of the Government's case-in-chief, Hively filed a motion for dismissal of Counts 14–15 and Racketeering Acts 13–14 for failure to state an offense because the indictment fails to identify the misrepresentations that Hively allegedly made, or in the alternative, for a judgment of acquittal. Hively also filed a separate alternative Rule 29 motion for judgment of acquittal of Counts 14 and 15 stating that the alleged false

representations contained in the counts are ambiguous.

The Court, having considered Hively's motions, the Government's responses in opposition, the Indictment and the evidence submitted during the initial trial, is of the opinion and so finds that Hively's motion to dismiss, or, in the alternative, judgment of acquittal and Hively's separate alternative motion for judgment of acquittal of Counts 14 and 15 should be denied.

The Court of Appeals in *United States v. Mallen*, 843 F.2d 1096 (8th Cir.1988), set forth the following guideline to be applied in resolving the issues raised by Hively's motion to dismiss:

An indictment is sufficient if it fairly informs the accused of the charges against him and allows him to plead double jeopardy as a bar to a future prosecution. (Citations omitted) It is not necessary that the indictment use the precise language used in the statute, as long as the indictment, by fair implication, alleges an offense recognized by by the law. (Citations omitted) An indictment is fatally insufficient when essential element "of substance" is omitted, a court may not insist that a particular word or phrase appear in the indictment when the element is alleged "in a form" which substantially states the element. (Citation omitted).

■ This Court is persuaded that counts 14 and 15 state the essential elements of the offense.[2] An indictment, ac-

---

**2.** The following paragraphs from counts 14–15 demonstrate the mode employed by the Government in putting Hively on notice of the charge against him: (7) During the course of the scheme, approximately $88,361 of DTF special deputy prosecutor's salary moneys were transferred to Hively from Ketz. (8) It was part of, and in furtherance of the scheme and artifice to defraud, that Hively, as the contracting official for the 16th DTF, cause misrepresentations to be made to the Arkan-

sas Department of Finance and Administration, that is, that the special deputy prosecuting attorney's salary was due and payable to Ketz when, in fact, Hively was receiving all of the money and utilizing it for his own personal benefit. (9) For purposes of executing and attempting to execute this scheme and artifice to defraud, Hively and Ketz knowingly caused to be delivered by mail the items of mail matter identified below . . . .

cording to the Eighth Circuit guideline, need not articulate in detail the factual proof that the Government will rely on to support the charges. If essential to a defense, factual details can be acquired by a motion for a bill of particulars.

Sue Patton, Hively's former secretary, testified that she worked for Hively from January, 1979 until April, 1980, and from June, 1988 until September, 1998; that in addition to her secretarial duties, she was responsible for keeping up with Hively's bank accounts and paying his bills; that Ketz was the attorney on paper for the 16th Judicial District Drug Task Force, but Hively did the work; that Hively directed her to have Ketz sign the monthly reports when she completed them; that Hively actually worked on the cases reflected in the contractor reports; that Ketz's DTF check was supposed to come to her desk and she would deliver it to the Hively and Ketz Law Firm and deposit it into Ketz's account, after which, she was supposed to receive a check from Ketz's account payable to Hively in the exact same amount; that she would deposit the check into Hively's attorney at law account; and these steps were taken at Hively's direction.

Jerry Duran, the Administrator of the Office of Intergovernmental Services, the agency charged with overseeing drug task force grants, stated that money awarded by the grant was intended to go to the special deputy prosecutor; that he presumed that Ketz was doing the work on cases that were submitted in documentation to his office because Ketz signed the contractor's report; and that had he known that Ketz was depositing the money received for the Drug Task Force in his account and then writing a check to Hively, he would have suspended the funding for that particular grant.

This Court is persuaded, after carefully reviewing the evidence offered by the Government in its case-in-chief, that there is sufficient evidence that would allow a reasonable jury for find Hively guilty beyond a reasonable doubt of Counts 14 and 15. Accordingly, Hively's motions for judgment of acquittal of counts 14 and 15 are denied.

## C. Counts 63 and 64 (Northrop and Clark/Clark Extortion Counts)

■ Hively contends that the evidence offered by the Government in it's case-in-chief failed to demonstrate that Hively's alleged conduct had any effect on interstate commerce with respect to John Milton Northrop or Willie Clark and Kathy Sampson Clark; and that the evidence failed to demonstrate that Hively engaged in any Hobbs Act "extortion" with respect to Northrop or the Clarks.

■ As asserted by the Government, in its response in opposition to Hively's motion, to establish a violation under 18 U.S.C. § 1951, the Government has to submit evidence demonstrating that Hively induced someone to part with property; that he did so knowingly and willfully by means of extortion, and that the extortion affected interstate commerce. See *United States v. Harmon,* 194 F.3d 890 (8th Cir. 1999).

The evidence reflects that Northrop was charged with three counts of rape, four counts of engaging children in sexual activities for use in visual medium, and one count of sexual abuse in the first degree. Detective Allen, the investigating officer, learned that the charges were reduced to a Class A misdemeanor from the newspaper.

Robert Willard, one of the victims, testified that he wanted Northrop to go to jail and that he never knew why the charges against Northrop were dropped; and that he had no conversation with Hively, did not want or ask for money in lieu of Northrop being prosecuted, and that he

learned about the disposition of the charges from the newspaper.

Northrop testified that after his arrest, a fellow inmate contacted J.E. Bonding, Inc., to arrange for his $250,000 bond; that Edwards arrived at the jail and provided a bond for him; that Edwards drove him to Heber Springs in order to get a second mortgage on his property with which to pay the bond fee; that he owned two and a half acres with two manufactured homes and one mobile home on the property; that after he was unable to obtain a bank loan to cover the $25,000 bond fee that he owed Edwards, Edwards suggested that Northrop sell him the property to pay the bond fee; that he did not want to dispose of the property but did so to pay the bond fee; and that he executed a mortgage in the amount of $25,000 and a second one for $250,000, but he did not understand why he signed the second mortgage.

Northrop further testified that Edwards told him that he (Edwards) was very close to Hively and that he could work things out; that Edwards told him that he could wipe the charges clean and that Northrop would have a clean slate, but it would cost Northrop $15,000 which would be taken out of the $20,000 that Northrop expected to receive from the sale of his property to Edwards; that Edwards stated that the $15,000 would be divided between Hively and the sheriff; that Edwards later gave him $4,000 and that he moved to Texas believing that his charges would be taken care of.

Northrop testified that Edwards contacted him around November 6, 1997, and stated that he would be flying to Dallas to meet with him; that he met Edwards at the airport, at which time Edwards presented him with a check for $12,000 from Cornerstone Land Development, Inc., (A company wholly owned by Edwards);and that Edwards asked him to sign an affidavit stating that Northrop had sold his property to Cornerstone, but Northrop refused.

Scott Ellington, an attorney, testified that he received a call from Edwards, asking if he would be interested in representing Northrop; that he met with Edwards and Northrop and that Edwards stated, "I've talked to T. J.(Hivley). This is going to be a misdemeaner case . . . he's charged with rape, but they're going to drop it to sexual misconduct." Ellington called Hively to verify what Edwards told him and Ellington testified that Hively stated "Yeah, that's a bull shit case. I don't think that he did what those people say he did. They're just trying to get money out of him." Ellington further testified that Hively suggested that Northrop "leave town for a little while and let things cool off." Ellington stated that he agreed to represent Northrop for $1,000 given the fact the charges would be reduced to a misdemeanor; that Edwards wrote a check for that amount and handed it to Northrop to sign; and that he never saw or spoke to Northrop again.

Ellington testified that he received a copy of the case file and learned the facts of the case and that Northrop had confessed; that during one conversation with Hively, Hively stated, " I'm not going go try that case." Ellington stated also that Hively stated, "you know, the witnesses have disappeared, and I don't know if we're going to be able to find them." Ellington testified that Hively had never before stated any concern about the witnesses being unavailable; and that he did not file a motion to suppress in Northrop's case because he knew that the case was going to be reduced to a misdemeanor based on his initial conversation with Hively.

John Earl Northrop, the son of John Milton Northrop, testified, when asked if his father wanted to sell the property to

Edwards, "absolutely not. This was his dream. Self-sufficiency."

The Court is persuaded that Hively's motion for judgment of acquittal with respect to Count 63 should be denied.

The Court is also persuaded there is enough evidence to allow a reasonable jury to convict Hively of the extortion scheme involving Willie Clark, Kathy Sampson Clark as well as Troy Gibson as covered under count 64 and racketeering act 45.

The Government offered evidence showing that Willie Clark, Kathy Sampson Clark and Roy Fullbright lived on property that Kathy had purchased with money that she had received from Willie; that on December 11, 1996, Fullbright and Kathy were arguing and that Willie killed Fullbright; that Willie was arrested and jailed and was later released on a bond submitted by J.E. Bonding Company; that in meeting with Edwards, Edwards told Kathy that he had a power of attorney for Willie and that she needed to turn her land over to Willie and his nephew, Fred Clark, and that if she failed to do so, she could be charged with conspiracy in the murder of Fullbright; and that Kathy executed a document thinking that Willie and Fred were the recipients, but the document was a Quitclaim Deed to Edwards.

Kathy testified that she signed the deed because she felt she had no choice and believed she would be prosecuted if she did not.

The evidence also reflects that Edwards admitted taking a tractor that Fullbright and Kathy had purchased and that the tractor was possessed for the posting of Willie's bond; and that Edwards in the presence of Kathy and Teresa Geary, a cousin of Ray Fullbright, made a phone call to Hively in an attempt, allegedly, to get a guarantee that Kathy would not be prosecuted.

Staggs, an associate of Edwards, testified that he notarized the quitclaim deed executed by Willie to Edwards; that he did not traditionally use quitclaim deeds for somebody he had bonded out of jail and that he did not think that Edwards had purchased the property from Willie; and that he was present when Kathy signed a quitclaim deed at J.E. Bonding, Inc.

Staggs testified further that he took Willie to Tennessee; that he was aware that Edwards had a joint checking account with Willie and he had received a check drawn on the account; that he was aware that Scott Ellington, an attorney, had represented Willie and it was unusual for a bondsman to hire an attorney for someone he had bonded out of jail.

Ellington testified that Edwards advised him that Hively had said that he was considering charging Kathy for putting Willie up to the murder and further indicated that Hively might not be interested in prosecuting Willie because Fullbright needed to be killed; that Hively suggested that Ellington file a motion to have Willie undergo a mental evaluation; and that Willie was found competent to stand trial and ultimately Willie entered a plea of guilty to a manslaughter charge under Hively's successor.

Relative to the Troy Gibson extortion issue, the Court is of the view that there was sufficient evidence proffered by the Government that would allow a reasonable jury to find Hively guilty of aiding and abetting Edwards in the extortion of money from Gibson.

The evidence reflects that officer Robert Norman of the Independence County Sheriff's Department arrested Gibson on the night of December 18, 1993, for driving while under influence of drugs; that during a verbal exchange, Gibson retrieved a cannister from his automobile and gave it

to David Coleman, a reserve officer who was with Norman; that the cannister contained what appeared to be marijuana; and that Norman made an inventory of Gibson's automobile and found a duffle bag that contained several bags of marijuana.

Norman further testified that upon returning to work after being off several days, he learned that the "prosecutor did not file charges on that particular arrest." Norman stated further that Hively informed him that the search of Gibson's automobile was bad and that the seized evidence would not be admissible; and that Hively did not ask him for any additional information about the case.

Gibson stated that he met with Edwards after being released from jail and advised Edwards about the circumstances regarding his arrest; and that Edwards said "it sounded like it was a bad bust to him[;]" and that Edwards stated further that if he talked with his friend, T.J. Hively, he could get the charges dropped and the charges would not reach the docket if Gibson was willing to make a donation to the drug task force; that $3,000 dollars were delivered to Edwards; that Hively did not formally file any charges against Gibson; and that Edwards told him that the $3,000 dollars would be split between himself, Hively and another individual.

### D. Count I (RICO)

▉ Finally, Hively alleges, in his supplemental brief in support of his motions for judgment of acquittal on all counts, that Count I is deficient because the racketeering acts set forth are not sufficiently related to each other and do not amount to or pose a threat of continued criminal activity and consequently, " the alleged violations are simply insufficient to provide a reasonable-minded jury with the ammunition necessary to find beyond a reasonable doubt that Hively participated in the affairs of the Sixteenth Judicial District

Prosecuting Attorney's Office through a 'pattern of racketeering activity' between 1993 and 1998. The Indictment does not allege, nor was it established, that it was the Sixteenth Judicial District's 'way of doing business' to extort money in criminal cases."

As asserted by the Government, in its response in opposition to Hively's request to dismiss Count I, there is sufficient evidence to enable a reasonable jury to find Hively guilty of the conduct set forth in Count I. For example, as prosecuting attorney, Hively executed the Cooperative Agreements that created the opportunity for Hively to receive the funds he received from OCSE for work he did not do; that as prosecuting attorney, he received funding for a special deputy prosecuting attorney position with the 16th DTF which he ultimately received personally; that as prosecuting attorney, Hively was able to affect the disposition of criminal charges against Gibson, Northrop and Clark; and that Hively used his position as prosecuting attorney to accommodate Edwards, a former associate in the bonding business, to get more business.

In addition, Andy Messer, financial analyst with the FBI, testified that Hively received a total of $464,117.63 from 1993 through 1998 from all of the schemes set forth in the indictment. That the schemes set forth in the indictment took place during Hively's tenure as prosecuting attorney, indeed, establishes the "threat of continued activity" required in RICO prosecutions. Accordingly, Hively's motion for judgment of acquittal as to Count I is denied.

Accordingly, for the reasons set forth above, it is hereby Ordered that Hively's motions to dismiss and for judgment of acquittal on all remaining counts are denied.

It Is Further Ordered, that a retrial will be held in this action on the 2nd day of September, 2003.